UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BALJINDER SINGH,

    Petitioner,

v.                                                19-CV-732
                                                      DECISION AND ORDER

WILLIAM P. BARR,
Attorney General;

THOMAS FEELEY,
Field Officer Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;

JEFFEREY SEARLS,
Facility Acting Director of Buffalo Federal
Detention Facility,

    Respondents.

---

On June 7, 2018, the pro se petitioner, Baljinder Singh, crossed the fence separating the United States and Mexico near Otay Mesa, California. Docket Item 1 at 5; Docket Item 4 at 2. That same day, a border patrol agent found him not far from there. Docket Item 4 at 2; Docket Item 1 at 5. The Department of Homeland Security ("DHS") has detained Singh since then—that is, for about fifteen months. Docket Item 1 at 5. He now petitions this Court for a writ of habeas corpus, seeking release from detention. Docket Item 1.

For the following reasons, Singh's petition is denied.

## BACKGROUND

The following facts, taken from the record, come largely from filings with DHS. Other facts, provided by Singh, are undisputed.

## I. IMMIGRATION HISTORY AND TIES TO THE UNITED STATES

Singh is a twenty-year-old man who is a citizen and native of India. Docket Item 4 at 2; Docket Item 3-2 at 1. He "left his country because he had a fear of persecution" from the "Congress Party Worker's" due to his religion and political opinion. Docket Item 1 at 5. The "Congress Party Worker's" twice "attacked and threat[e]ned" Singh. *Id.* Police and government officials "turned a complete blind eye to his complaints and gave no help, leaving [Singh] no other option than to fle[e] from India to save his life." *Id.* Singh says that an unspecified non-profit organization "and some family friends and relatives in the United States" have "offered to support him while he . . . pursue[s] and seeks" asylum status. *Id.*

After Singh crossed the border and was arrested, he was transferred to a border patrol station where he claimed "credible fear of returning back to his home country." Docket Item 3-2 at 2-3  He was "advised of his right to speak with a Consular Official from India," but he "stated he would like to speak with an official at a later time." *Id.* at 3.

## II. REMOVAL PROCEEDINGS

On August 28, 2018, DHS charged Singh with being subject to removal. Docket Item 4 at 2-3.

On January 2, 2019, an immigration judge ("IJ") determined that based on Singh's admissions, his removal was "established by clear, convincing and unequivocal

evidence." Docket Item 3-2 at 18. With respect to Singh's application for asylum, withholding, and relief under the U.N. Convention against Torture, the IJ had set December 14, 2018, as a deadline, but as of January 2, 2019, Singh "still [did] not have that application." *Id.* at 19. Therefore, the IJ "deemed abandoned and dismissed for lack of prosecution" Singh's asylum claim and other requests for discretionary relief from removal. *Id.*

Singh appealed that decision to the Board of Immigration Appeals ("BIA") on February 4, 2019, Docket Item 4 at 4, and on June 11, 2019, the BIA denied the appeal, Docket Item 3-2 at 22-23. The BIA explained that "[a]t the removal hearing on December 4, 2018, [Singh] was provided with a Form I-589 and directed to file it with the Immigration Court on or before December 14, 2018." *Id.* at 22. Although Singh filled out the form, he said he was directed by an attorney not to submit it. *Id.* The BIA determined that "the [IJ] properly concluded that [Singh] had abandoned his opportunity to apply for asylum, withholding of removal, and protection under the Convention Against Torture." *Id.* 22-23.

Singh has not asked the Second Circuit to review the BIA's decision. Docket Item 4 at 4. His deadline for doing so was July 11, 2019. *Id.*; *see* 8 U.S.C.§ 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal").

Since Singh's final order of removal, "DHS has contacted the Consulate of India to secure travel documents for [his] removal." Docket Item 4 at 5. "There are no institutional bars to Singh's removal." *Id.*

3

## III.  DETENTION-RELATED PROCEEDINGS

On September 4, 2018, DHS determined that it would keep Singh in custody pending a final administrative determination in his immigration proceeding.  Docket Item 4 at 3.  Singh requested a hearing before an IJ and release on bond.  *Id.*  A bond hearing was scheduled for November 13, 2018, but on that date, Singh's attorney failed to appear and the hearing was rescheduled for December 4, 2018.  *Id.*

On November 29, 2018, Singh was transferred to the Buffalo Federal Detention Facility in Batavia, New York.  *Id.* at 4.  On December 4, 2018, an IJ held the scheduled bond hearing, *id.*, and on December 6, 2018, the IJ issued a written order denying "the request for a change in custody status . . . pursuant to 8 CFR 236.1(c)."  Docket Item 3-2 at 15.  The IJ determined that Singh presented a risk of flight because (1) he has no close family ties, (2) he has no bank accounts, (3) he has no real or personal property, (4) he has no fixed address, and (5) he used a smuggler to enter the United States.  *Id.*  Singh did not appeal the IJ's order.  Docket Item 4 at 4.

On June 5, 2019, Singh filed this petition for a writ of habeas corpus seeking release from his detention.  Docket Item 1.  On August 5, 2019, the government responded.  Docket Items 3-6.  Singh has not replied, and his time to do so now has expired.  *See* Docket Item 2.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Singh is validly detained under 8

4

U.S.C. § 1231(a). Docket Item 5 at 7-10.[1] Docket Item 10 at 5. Singh makes several arguments to the contrary. Docket Item 1 at 7, 16. First, he argues that "his detention violates § 1226(a) without a proper bond hearing." *Id.* at 7. Second, he argues that his "ongoing detention" is not justified by individualized findings made in "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (quoting *Shaughnessy v. United States ex. rel Mezei*, 345 U.S. 206, 212 (1953)). *See id.* at 7, 16. Specifically, he argues that "[t]o justify [his] ongoing detention, due process requires that the government establish, at an individualized hearing before a neutral decision maker, that [his] detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk." *Id.*; *see also id.* at 7 (Singh "argues that his prolonged detention more than eleven months without a meaningful review of his detention . . . violates his" procedural due process rights); *id.* at 9-10. Third, Singh argues that his "prolonged detention more than six months violates his right to substantive due process." *Id.* at 7; *see also id.* at 9. Fourth, he argues that the "government's categorical denial of bail to certain non-citizens violates" the Excessive Bail Clause. *Id.*

---

[1] The government filed a motion to dismiss Singh's petition. Docket Item 3. In its "Notice of Motion," the government claims "that the Court lacks jurisdiction and fails to state a claim pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* But in its memorandum of law, the government fails to clearly articulate its reasoning regarding that jurisdictional claim. *See* Docket Item 5. In any event, that motion is denied as moot.

5

Because Singh is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I. 8 U.S.C. § 1226(a)

Singh contends that "his detention violates § 1226(a) without a proper bond hearing." Docket Item 1 at 7. Although Singh may have been detained under 8 U.S.C. § 1226(a) when he filed his petition, the BIA now has ruled on his appeal of his removal order, and Singh has not sought review of that decision. Therefore, he now is detained under 8 U.S.C. § 1231, *see Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir. 2018), and his detention cannot violate § 1226(a).

## II. DUE PROCESS CLAUSE

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any "person . . . of . . . liberty without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of . . . liberty . . . survives substantive due process scrutiny, it must still be

6

implemented in a fair manner." *Id*. "This requirement has traditionally been referred to as 'procedural' due process." *Id*.

### A. Substantive Due Process

Singh argues that his "prolonged detention more than six months violates his right to substantive due process." Docket Item 1 at 7. In fact, he has now been detained for about fifteen months. There may be a "point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Salerno*, 481 U.S. at 747 n.4. Nevertheless, this Court cannot say that fifteen months of detention necessarily violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention of excludable alien did not violate due process).

As noted above, 8 U.S.C. § 1231 governs Singh's detention. In *Zadvydas*, the Supreme Court determined that § 1231 "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. "Because the *Zadvydas* Court set forth this [limit] in order to prevent § [1231] from violating the Due Process Clause, . . . detention of an alien [after that point] not only violates § [1231], it also violates the Due Process Clause." *Wang*, 320 F.3d at 146. Conversely, if detention is valid under *Zadvydas*, it cannot violate substantive due process. *See id.*; *see also Zadvydas*, 533 U.S. at 699.

Section 1231 "addresses immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria*, 891 F.3d at 54 (quoting 8

7

U.S.C. § 1231(a)(1)(A)). That statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)). After the ninety-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." *Zadvydas*, 533 U.S. at 683 (quoting § 1231(a)(6)). During the first six months of an alien's § 1231(a) detention pending removal, the detention is "presumptively reasonable." *Id.* at 701; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002) (and cases cited therein) ("presumptively reasonable '[six]-month period' for detention pending removal . . . commences at the beginning of the removal period.").

Singh's removal period began on June 11, 2019, the day his removal order became administratively final. *See* Docket Item 4 at 4-5; *see also* 8 U.S.C. § 1231(a)(1)(B)(i). The government does not argue that Singh's removal period was suspended under 8 U.S.C. § 1231(a)(1)(C).[2] *See* Docket Item 5. Therefore, Singh's

---

[2] Under 8 U.S.C. § 1231(a)(1)(C):

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8

removal period expired ninety days later—on September 9, 2019. But his period of "presumptively reasonable" detention pending removal will not expire until about three months after that—that is, on December 11, 2019.

Moreover, the government has advised that there "are no institutional bars to Singh's removal" and that DHS removes "hundreds of aliens to India" each year. Docket Item 4 at 5. In light of that data and without any indication that his case is unique, Singh cannot overcome the presumption that his detention is reasonable and that his removal remains reasonably foreseeable. Because Singh's detention has not yet violated § 1231(a) as interpreted by *Zadvydas*, it does not violate his substantive due process rights. *See Wang*, 320 F.3d at 146.

### B. Procedural Due Process

Singh also argues that his ongoing detention violates his right to procedural due process. Docket Item 1 at 7, 16. "[G]overnment detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690. (internal citations omitted) (emphasis in original). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019) (Gorsuch, J., announcing the judgment of the Court and delivering an opinion).

9

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). The Due Process Clause is not offended by the mandatory detention of aliens for the "*brief period necessary* for their removal proceedings," *id.* at 513 (emphasis added), but a detained alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified." *id.* at 532 (Kennedy, J., concurring).

Singh is no longer detained pending his removal proceedings, however. Therefore, "[t]o the extent that [Singh] previously may have had a cognizable due process argument [when he was detained] under [§ 1226], that claim has been rendered moot." *Wang*, 320 F.3d at 147. Now that Singh's removal proceedings are complete and there are "no remaining barriers preventing [his] immediate removal," *Hechavarria*, 891 F.3d at 57, the government must be given a reasonable period of time to "bring about [his] removal from the United States" while he is detained. *See Zadvydas*, 533 U.S. at 689; *see also Demore*, 538 U.S. at 521.

This Court has determined that § 1231(a)(6) requires an alien to receive a bond hearing at which the government must prove by clear and convincing evidence that the alien is a danger or a flight risk to permit continued custody after 180 days of § 1231(a) custody. *Senor v. Barr*, 2019 WL 3821756, at *4 (W.D.N.Y. Aug. 15, 2019); *see also*

*Guerrero-Sanchez v. Warden York Cty Prison*, 905 F.3d 208, 224 (3d Cir. 2018) (same); *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011) (same). But Singh has not been detained under § 1231 for that long yet. Therefore, Singh's detention does not violate the implicit bond hearing requirements of § 1231(a)(6) or his right to procedural due process.

## III. EXCESSIVE BAIL CLAUSE[3]

Singh argues that the "government's categorical denial of bail to certain non-citizens violates" the Excessive Bail Clause. Docket Item 1 at 16. But Singh lacks standing to adjudicate that claim because he was not categorically denied bail.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *All. for Envtl. Renewal, Inc. v. Pyramid*

---

[3] The government argues that the Eighth Amendment does not apply to civil confinement. Docket Item 5 at 10-11. This Court disagrees. "[T]he Bail Clause may be implicated in civil deportation proceedings." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 n.3 (1989). This Court addressed this issue in *Sankara v. Barr*, 2019 WL 1922069, at *9 n.9 (W.D.N.Y. Apr. 30, 2019). Moreover, the government's argument runs contrary to the Supreme Court's opinion in *Austin v. United States*, 509 U.S. 602, 608-09 (1993). It is true that "[s]ome provisions of the Bill of Rights are expressly limited to criminal cases." *Id.* at 607. But "the text of the Eighth Amendment includes no similar limitation" with respect to the Excessive Fines Clause and the Excessive Bail Clause. *Id.* at 608. "Nor does the history of the Eighth Amendment require such a limitation." *Id.* At the time our nation was founded, defendants in civil actions could be arrested and required to post bail to ensure their appearance for resolution of the civil claims. *See Ryan v. U.S. Immigration and Customs Enf't*, 382 F. Supp. 3d 142, 155 (D. Mass. 2019) ("In England, for many centuries prior to the founding of the United States, civil litigants commenced their suits by having a civil defendant arrested."). And courts in this country have long recognized that excessive bail clauses apply to these civil arrests. *See, e.g., Jones v. Kelly*, 17 Mass. 116, 116 (1821) (applying Massachusetts Declaration of Rights Article 26) ("[P]arties complaining of wrongs of any kind may allege their damages, and demand sureties to any amount. When excessive bail is demanded, it is a proper case for the interposition of this Court.").

11

*Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). To establish standing, a party must allege (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). In this case, Singh's injury—the denial of his liberty—does not bear "a causal connection" to "the conduct complained of." *See id*. Singh had a bond hearing where an IJ denied bail based on individualized findings. Therefore, regardless of whether Singh is correct that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment," Docket Item 1 at 16, the government did not categorically deny *him* bail. Therefore, Singh's injury lacks a causal connection to the conduct complained of, and he lacks standing to bring this claim.

*Pro se* submissions "should be read 'to raise the strongest arguments they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). Read liberally, the petition alleges that Singh's individual denial of bail also violates the Excessive Bail Clause. Even when "there is no absolute federal constitutional right to bail[,] . . . once a [government] provides for bail," the Eighth Amendment "impose[s] certain limitations on the [adjudicator's] discretion to grant or refuse bail." *Brown v. Wilmot*, 572 F.2d 404, 405 (2d Cir. 1978). Indeed, the Second Circuit has held that there is "no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons." *United States ex rel. Goodman v. Kehl*, 456 F.2d 863, 868 (2d Cir. 1972).

To establish that an individualized denial of bail violates the Excessive Bail Clause, the detainee must show "that there is no rational basis in the record for the denial of bail." *Finetti v. Harris*, 609 F.2d 594, 601 (2d Cir. 1979);[4] *see also Serrano-Vargas v. Lowe*, 2019 WL 3003382, at *4 (M.D. Pa July 10, 2019) (applying *Finetti* to IJ's decision to deny bond); *Chajchic v. Rowley*, 2017 WL 4401895, at *5 (M.D. Pa. July 25, 2017) (same). Here, Singh has offered nothing more than a conclusory allegation that the IJ violated his rights under the Excessive Bail Clause. *See Danylocke v. Dalsheim*, 662 F. Supp. 961, 963 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988). He "adds nothing of substance to rebut the presumption of validity that [this Court] must give to the [IJ's] decision." *Id.* at 964. Accordingly, this Court "decline[s] to review the . . . record" to determine whether there is a rational basis for denial of bail. *See id.* Singh's individualized Excessive Bail Clause claim fails.

---

[4] This test is rooted in the "considerations of comity and federalism" that apply when reviewing state court denials of bail, *see Finetti v. Harris*, 609 F.2d 594, 601 (2d Cir. 1979)—considerations that do not apply with respect to immigration detention by the federal executive. Nevertheless, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). Therefore, there is good reason to apply this lenient standard here—at least with respect to a detainee like Singh who was "merely on the threshold of initial entry" into this country when DHS encountered and detained him. *United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)); *see Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (applying rational basis review to uphold policy regarding admission and exclusion of foreign nationals).

## **CONCLUSION**

For the foregoing reasons, Singh's petition for a writ of habeas corpus, Docket Item 1, is DENIED without prejudice. The government's motion to dismiss, Docket Item 3, is DENIED as moot.

SO ORDERED.

Dated:	September 16, 2019
	Buffalo, New York

              *s/ Lawrence J. Vilardo*
              LAWRENCE J. VILARDO
              UNITED STATES DISTRICT JUDGE